IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | CIVIL ACTION NO.  16-CR-365-JFC |
| | ) | |
| | ) | JUDGE JOY FLOWERS CONTI |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **YOUNES KABBAJ,** | ) | |
| | ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION</u>

Pending before the court is a motion by defendant  ("defendant" or "Kabbaj") for a hearing pursuant to 18 U.S.C. § 4241(a) or early termination of supervised release (ECF No. 185).  The government filed a response in opposition. (ECF No. 187).  Kabbaj filed a reply on the docket of his pending case at the Third Circuit Court of Appeals.  The motion is ripe for decision.  Because the issues are thoroughly briefed and defendant is physically located in Florida, the court determines that a hearing is not necessary.  Also pending are a pro se motion requesting permission to file electronically in the above-captioned criminal case (ECF No. 184), and a pro se motion to recuse pursuant to 28 U.S.C. §§ 144 and 455 and transfer jurisdiction over supervision from Pennsylvania to Texas (ECF No. 191).

On January 27, 2017, Kabbaj entered into a guilty plea agreement with the United States.  He pleaded guilty to influencing a federal official by threat, in violation of 18 U.S.C. §§ 115(a)(1)(B) and (b)(4), arising from his communication of a threat via email to assault a United States magistrate judge.  (ECF No. 187-1).  Kabbaj was sentenced on

May 1, 2017, consistent with the terms of the plea agreement, to 23 months of imprisonment followed by 36 months of supervised release. Kabbaj was released from prison and began his term of supervised release in November 2017. The case was reassigned to the undersigned on April 10, 2018. (ECF No. 183).

## I.     RECUSAL

The court will first address Kabbaj's motion for recusal (ECF No. 191). The statute governing judicial disqualification provides, in pertinent part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned.

28 U.S.C. § 455(a). The test for disqualification pursuant to § 455(a) is "whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." In re Kensington Int'l Ltd., 353 F.3d 211, 220 (3d Cir. 2003). "It is 'vital to the integrity of the system of justice that a judge not recuse [herself] on unsupported, irrational or highly tenuous speculation.'" Pondexter v. Allegheny Cnty. Housing Auth., Civ. No. 11-857, 2012 WL 1621370, at *2 (W.D. Pa. May 9, 2012) (quoting McCann v. Commc'ns Design Corp., 775 F. Supp. 1506, 1523 (D. Conn. 1991) (alteration in original)). A court's "rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994). The Supreme Court has explained:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. See United States v. Grinnell Corp., 384 U.S., at 583, 86 S.Ct., at 1710. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed

below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal.

Liteky, 510 U.S. at 555.

In his recusal motion, Kabbaj also cites 28 U.S.C. § 144, which provides:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

It is difficult to discern the basis for recusal asserted by Kabbaj. He did not submit an affidavit setting forth the facts and reasons for his belief that bias exists, as required by § 144. The majority of his lengthy filing recounts Kabbaj's experiences with the LGBTQIAXYZ+ network and the Bin Laden Al-Queda organization. The only accusation against the undersigned is Kabbaj's displeasure about the court's order of December 21, 2018, which instructed him to file documents through the clerk's office instead of sending emails directly to the judge's chambers.

As noted in Liteky, disagreement with a judicial ruling is almost never a valid basis for recusal. 510 U.S. at 555. In this case, the undersigned was specially appointed by the Chief Judge of the Court of Appeals for the Third Circuit to serve in the District Court for the Eastern District of Pennsylvania for this case, in part to minimize concerns about impartiality. No basis for recusal exists. The motion for recusal will be DENIED.

## II.      ELECTRONIC FILING

Kabbaj requests permission to file electronically (ECF No. 184).  He points out that he has been a pro se litigant for eight years, completed the ECF training class and abided by all ECF rules and regulations.  The government did not respond directly to this motion.  In its response to Kabbaj's motion for courtesy copies of filings, however, the government observed that Kabbaj could register on PACER.  (ECF No. 190).

Given the nature of Kabbaj's underlying criminal conduct (sending a threatening email to a United States magistrate judge), some caution is warranted in extending electronic filing privileges.  On balance, however, it is more appropriate for Kabbaj to file documents on the ECF system than for him to send emails to judicial chambers.  *See* court's order of December 21, 2018 (instructing Kabbaj to file documents through the clerk's office instead of sending emails directly to the judge's chambers).

The privilege to file on the ECF system will be extended to Kabbaj, so long as he complies with all applicable filing rules.  As Kabbaj recognizes:  "Just as easily as electronic privileges can be granted by the Court, it is also clear to defendant that if he were to abuse this ability in any way whatsoever, [ ] the ECF capability can just as easily be revoked."  (ECF No. 184 at 2).  In accordance with the foregoing, the motion for permission to file electronically (ECF No. 184) will be GRANTED.

## III.      § 4241 or EARLY TERMINATION OF SUPERVISED RELEASE

### A.  Section 4241 Hearing

In his motion at ECF No. 185, Kabbaj seeks a hearing to determine his own mental competency pursuant to 18 U.S.C. § 4241(a).  He contends that he has been

targeted with false allegations of schizophrenia.  He states that the government started accusing him of schizophrenia in 2001.  (ECF No. 185 at 2).  Kabbaj wants this reference stricken from the record.

In opposing a hearing under § 4241, the government points out, correctly, that there is no pending petition to revoke Kabbaj's release or modify the terms of his supervision.  His competency is not currently in dispute and he has presented no evidence to support a "reasonable cause to believe" that he is presently incompetent.  The government argues that § 4241 should not be used to expunge a diagnosis of schizophrenia made many years ago.

The court agrees with the government.  The purpose of § 4241 is to ensure that a defendant is competent to understand the proceedings against him and to assist in his own defense (if represented by counsel) or represent himself (if pro se).  The statutory text focuses on the present mental status of the defendant.  There are no proceedings pending against Kabbaj and he has demonstrated his ability to file motions on his own behalf. Section 4241 should not be used as a mechanism to revisit a diagnosis of a medical condition made in 2001.  The motion for a § 4241 hearing will be DENIED.


B.  Early Termination of Supervision

In the alternative, Kabbaj seeks the "immediate termination of the supervision so that he can leave the country to try and re-establish his terrorism ceasefire initiative through other non-LGBT governments who have stated a willingness to sponsor it (because they are not biased against defendant simply because he is a true Muslim that does not sell out to the LGBT lobby)."  (ECF No. 185 at 18).  Kabbaj explains that he

seeks to return to the Middle East.  Kabbaj clarifies that his present probation officer has

been professional in how she conducts herself.  *Id*. at 11.  He notes that he has not

violated any terms of his supervision and that he will continue to refrain from any contact

with the American School of Tangiers ("AST") organization.  *Id*. at 19-20.  The

government opposes early termination of supervision, due to the nature of the offense and

Kabbaj's personal characteristics.  The government argues that Kabbaj failed to show

unusual circumstances to justify early termination.

Supervised release "serves an entirely different purpose that the sentence imposed

under § 3553(a)," Pepper v. United States, 562 U.S. 476, 502 n. 15 (2011).  It "fulfills

rehabilitative ends, distinct from those served by incarceration." United States v.

Johnson, 529 U.S. 53, 59 (2000).  The court's determination whether early termination of

supervised release is "warranted by the conduct of the defendant released and the interest

of justice," § 3583(e)(1), is a discretionary decision.  United States v. Bayard, 537 F.

App'x 41, 42 (3d Cir. 2013).   The court concludes it has jurisdiction to consider a motion

for early termination of release even if the underlying sentence is on appeal.  The

decision cited by the government, United States v. Batka, 916 F.2d 118, 120 (3d Cir.

1990), involved a Rule 35(b) motion and the appellate court explained that it took

exclusive jurisdiction "over the aspects of the case involved in the appeal."  Id.

Pursuant to the governing statute, 18 U.S.C. § 3583(e):

[t]he court may, after considering the factors set forth in section
3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and
(a)(7)—

(1) terminate a term of supervised release and discharge the
defendant released at any time after the expiration of one
year of supervised release, pursuant to the provisions of
the Federal Rules of Criminal Procedure relating to the

> modification of probation, if it is satisfied that such
> action is warranted by the conduct of the defendant
> released and the interest of justice.

18 U.S.C. § 3583(e)(1).  As specified in § 3583(e)(1), in exercising its discretion, the

court must consider the following factors:

- the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);

- the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);

- the sentencing range established by the Sentencing Commission, § 3553(a)(4);

- any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);

- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and

- the need to provide restitution to any victims of the offense, § 3553(a)(7).

 In United States v. Laine, 404 F.App'x 571 (3d Cir. 2010), the court stated that

"early termination of supervised release under section 3583(e) should occur only when

the sentencing judge is satisfied that something exceptional or extraordinary warrants it."

404 F. App'x at 573-74. "Compliance with the conditions of supervised release are

expected and not exceptional." Id. at 574.

The court first will consider the pertinent factors set forth in § 3553(a) as instructed in

18 U.S.C. § 3583(e)(1), and then determine whether early termination of defendant's

supervised release is appropriate in consideration of the § 3553(a) factors and in the

interest of justice.  The court notes that Kabbaj did not address these factors in his

submission to the court.

 ***(1) The nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1).***

Kabbaj was convicted of a serious offense involving a threat to a United States magistrate judge.  He had no prior criminal history.  The presentence report reflected that Kabbaj was diagnosed with mental illness, although he disputed the accuracy of that diagnosis.  Kabbaj was hospitalized for psychiatric reasons in New York on four occasions from 2001-2003, and once in Florida in 2005.  The presentence report also reflects substance abuse by Kabbaj prior to his completion of the RDAP program.  In Kabbaj's most recent filings, he reports significant and ongoing interactions with terrorists, weapons of mass destruction ("WMD"), LGBT activists and Al-Queda.  He discloses his intent to try to reestablish a terrorism ceasefire initiative.

This factor weighs heavily against early termination of supervision.  Even if Kabbaj has complied with the conditions of supervised release, supervision is helpful to provide ongoing oversight and structure to ensure that he has access to resources if needed to address any recurrence of mental or substance abuse issues.  Taken at face value, Kabbaj's reported contacts with terrorists would be dangerous to him and in violation of the standard conditions of his supervised release, which prohibit all communications with persons who are engaged in criminal activity.  Continuation of his supervised release is essential to ensure that Kabbaj does not engage in such conduct.

***(2) The need for the sentence imposed to afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner§§ 3553(a)(2)(B)-(D).***

The continuation of supervision affords deterrence to future criminal conduct and

protects the public from further crimes by defendant.  The probation officer is also able to provide Kabbaj with vocational training, medical care or other treatment, if needed.  This factor weighs against an early termination of supervised release.

***(3) The sentencing range established by the Sentencing Commission, § 3553(a)(4).***

Kabbaj's initial guideline range for imprisonment was 30 to 37 months.  Kabbaj was sentenced to only 23 months of imprisonment based on his plea agreement with the government.  The court sentenced him to a term of three years of supervised release, within the guidelines, of which he has served only one year.

The court determines that this factor weighs against early termination of his supervised release.

***(4) Any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5).***

No pertinent policy statements were raised by the parties with respect to this matter.

***(5) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6).***

There is no evidence of a need for early termination of Kabbaj's supervised release to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  Generally, the full term of supervision is fulfilled because "simple compliance with the conditions of supervised release are expected." *Laine*, 404 F. App'x at 574.

***(6) The need to provide restitution to any victims of the offense, § 3553(a)(7).***

Restitution is not at issue in this case.

In essence, Kabbaj contends that his compliance with the conditions of supervision justifies early termination of his supervised release.  The government responds that

Kabbaj has done nothing to justify early termination of supervised release.

The statute requires the court to be satisfied that early termination is both: (1) warranted by Kabbaj's conduct; and (2) in the interest of justice. § 3583(e)(1). Numerous courts have explained that this standard requires conduct or circumstances that are out of the ordinary. In United States v. Medina, 17 F.Supp.2d 245 (S.D. N.Y. 1998), the court pointed out that if mere compliance with the required conditions of supervision were sufficient to warrant early termination and was in the interest of justice, this justification would "swallow the rule." 17 F. Supp. 2d at 247. As summarized recently in United States v. Davies, No. 07-436, 2018 WL 2227962 at *7 (May 16, 2018):

> "Simple compliance with the conditions of supervised release [is] expected and not exceptional." Id. at 574; United States v. Abdelhady, No. 06-63, 2013 WL 1703775, at *2 (W.D. Pa. Apr. 19, 2013) ("[I]t is well-settled that mere compliance with the terms of supervised release, while commendable, is not sufficiently extraordinary to justify early termination."); United States v. Dudash, No. 05-101, 2012 WL 874878, at *3 (W.D. Pa. Mar. 14, 2012) ("Defendant's full compliance with all of the conditions of supervised release does not warrant early termination."). "In other words, the § 3553(a) factors and the interest of justice do not support early termination unless there is a reason other than compliance with the conditions of supervision." United States v. Banks, No. 04-176, 2015 WL 926534, at *4 (W.D. Pa. Mar. 4, 2015) (citing United States v. Medina, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) ("While [the defendant's] post-incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release since, if it were, the exception would swallow the rule.")).

Under defendant's approach, anyone on low risk supervision could qualify for termination after one year, regardless of applicable statutory mandatory minimum terms of supervision. That approach does not strike the court as being a tenable position under the statutory language. Indeed, the fact of compliance may very well mean that supervision is serving its deterrent and rehabilitative purposes and continuation of it to full term will achieve its desired effects on the supervised individual and community. At

least, something more than refraining from violations, even if not extraordinary or exceptional, should be required to warrant an exercise of discretion to terminate supervision early.

Considering the relevant factors, and the basis urged for early termination of supervision, the court finds that early termination is not warranted and is not in the interest of justice in this case.  The court commends Kabbaj for his compliance with the conditions of his supervised release to date.  Although laudable, these actions are expected and indeed required on supervised release.  Kabbaj faces a minimal burden to complete the remaining term of supervised release to which he was sentenced.  The court is not convinced to terminate his supervised release early.

IV.    CONCLUSION

Based upon the foregoing, the court will:  (1) deny the motion for recusal (ECF No. 191); (2) grant the motion for electronic filing; and (3) deny the motion for a § 4241 hearing or early termination of supervised release.

An appropriate order follows.

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge