UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

United States of America
    v.                                              Case No. 16-cr-365
Younes Kabbaj

**MOTION/PETITION UNDER 28 USC 2255**

1. Younes Kabbaj ("defendant") submits this emergency motion to terminate a sentence which is currently illegal pursuant to 28 USC 2255 because the statutory maximum term of supervision set by Congress for the offense of conviction ended on November 6th, 2018. Attached to this motion as Exhibit 1 are the footnotes ("FN") which contain definitions, case law, model jury instructions and other relevant precedent that affirms the relief requested in this motion. Defendant will cite these footnotes as FN#[and the number of the footnote cited]. Also filed contemporaneously herewith, is a supporting Affidavit and appendix. Defendant incorporates via reference, his previously filed motion seeking authorization to serve subpoenas in order to prepare for these 2255 proceedings, and with intention to amend this Motion/Petition at the close of discovery.

2. Judge Conti has already ruled that a hearing under 18 USC 4241 is no longer required because defendant's appeal of his original conviction does not constitute a "pending proceeding" under its definition of that term. Under the facts of this case, it appears that the Court is clearly referring to the allegation that defendant was not competent at the time he filed the appeal, thereby nullifying the pending appeal as invalid (and thus no-longer pending) because it was not filed by a competent defendant (or his competent Standby Counsel) prior to the expiration of the deadline to file an appeal on May 15th, 2017.

3. Defendant's understanding of the proceeding which occurred on 7/15/2016, is that the Court specifically affirmed that even if defendant attempted to proceed PRO SE despite this alleged "incompetence," that the Court would still assign Standby counsel to ensure that the incompetent defendant is not denied his "constitutional right to counsel." Even after the incompetent defendant was approved to proceed PRO SE under this unprecedented arrangement, he still filed motions requesting that the Court make the arrangement official by appointing the Standby counsel as co-counsel, but the court refused (presumably to prevent defendant from filing an ineffective assistance of counsel claim). The Court thereby appointed Counsel to protect

defendant's "constitutional right" to have an attorney sitting next to him after he was already deemed incompetent on 7/15/2016, while simultaneously also trying to deny the defendant his right to file an ineffective assistance of counsel claim by assigning the attorney to be "Standby Counsel" to an incompetent defendant.  Standby Counsel should not have accepted such an arrangement without competency being definitely resolved because it is always an ethical violation for any Standby Counsel to know that the Court has deemed a defendant incompetent while simultaneously allowing him to represent himself PRO SE (while an attorney assigned to the defendant thereby witnesses this violation of statute and remains silent about it).  Although the attorneys who directly witnessed this crime (Nina Spizer and Tracy Frederick), immediately recused themselves from the case specifically because the Court invoked this unprecedented arrangement (as the Public Defenders clearly asserted their "ethics" as a basis to recuse when they refused to proceed as Standby Counsel to an incompetent defendant), but even after a subsequent attorney Ibrahim Gonzalez was appointed and defendant informed him about the illegal conduct engaged during the hearing held on 7/15/2016, he never challenged it and accepted the Court's request that he be assigned as Standby Counsel to an incompetent defendant without stating any objection to this arrangement on the record.  Mr. Ibrahim instead refused to assist defendant regarding numerous issued pertaining to his defense under the claim that it would be "unethical" for him to serve subpoenas for defendant, that were all born out of the very delusions that resulted in his being found to be incompetent on 7/15/2016.

     4.  You cannot ethically proceed as Standby counsel to an incompetent defendant, and that is exactly the reason why Public Defender's Nina Spizer and Tracey Fredericks refused to continue as Standby Counsel to defendant and instead passed that crime onto Ibrahim Gonzalez to complete for them.  For those reasons, defendant asserts that it was ineffective assistance of counsel for Mr. Ibrahim to allow defendant to proceed throughout the entirety of his defense despite the unresolved finding of incompetency issued on 7/15/2016 (which he himself relied upon to refuse to serve subpoenas because they were born of defendant's "delusion" and thus it was not "ethical" for him to act upon delusion. Thus Attorney Ibrahim failed to file an appeal of the conviction (which was itself invalid specifically because defendant's competency was never officially restored following the hearing held on 7/15/2016, although defendant is not disputing the validity of the conviction at this time, as he is only disputing the validity of the sentence).

5.  Despite these unprecedented crimes which all occurred prior to the conviction being forced upon defendant in this matter, the judiciary again attempted to reaffirm defendant's incompetence even after his release from the imprisonment (under penalty of imprisonment of defendant if he did not comply, which he further appealed as Third Circuit Appeal No. 18-1302), as part of an illegal course of action meant to result in further illegal imprisonment of defendant. The Third Circuit refused to rule on numerous pending motions by defendant seeking reversal of the ruling and again permitted the District Court to re-affirm incompetence starting since 3/19/2018 and continuing until Judge Conti finally confirmed that the judiciary will never allow defendant to question, cross-examine or dispute any medical professional which has deemed defendant to be incompetent.  Thus now that the District Court has officially and conclusively affirmed that an incompetent defendant can continue to file critical pleadings in his case, defendant accepts that legal guidance and he is now filing his preliminary 2255 (as the 1-year statute of limitations starts from the date of Judge Conti's ruling on 2/6/2019, and there is no pending proceeding in the Third Circuit because the Court is now alleging that an appeal was never filed by any competent person (as an incompetent person cannot lawfully make any filings in the Court, up until Judge Conti dispensed with 18 USC 4241 as existing in reality starting since 2/6/2019).

<u>Legal basis for relief under 28 USC 2255</u>

6.  Defendant was arrested on March 7th, 2016 and charged by indictment with threatening three specific persons identified by the FBI and AUSA as Mary Thynge, Larry Seegull and Brian Albro.  Defendant submitted numerous filings and sworn declarations affirming that the language being charged against him is not traditionally illegal under the statutes charged (to include ECF#061), whereby defendant conducted a line-by-line analysis of every single word in the email to prove that he never violated the First Amendment (according to its traditional interpretations, the case law and also the affirmative defenses clearly available to defendant which invalidate the indictment).

7. The judiciary responded to defendant's filings by criminalizing threats to injure any part of a human's "self-identity" to include their financial, emotional and/or reputational well-being (using the broad "self-identity" parameters of the LGBT religion as their obvious basis for such preposterous claims).  This First Amendment scam was directly precipitated by a fatal flaw contained in the language of the indictment under Count 1, 18 USC §875(c) whereby the indictment fails to include the required statutory language describing the type of injury threatened

as injury to "the person of another" (i.e. injury to the physical body of another through the use of illegal physical contact).  The prosecutors intentionally removed that statutory language from their indictment to thereby deceive a grand jury into approving their vastly-broadened interpretations of the statutes.

8. Defendant eventually discovered this intentional and malicious statutory language omission in the indictment, and he thereby realized that the omission of this critical statutory language from the indictment clearly allowed defendant to be convicted under 18 USC §875(c) for threatening to injure reputation (which is only criminalized under 18 USC §875(d) when extortion is involved).  When defendant brought this to the attention of the Court, the Court reacted by ruling that the type of injury being threatened is not an element of the offense.  This ruling clearly affects both statutes because the type of injury being threatened is an element of both statutes.  Defendant again raised this objection to the Court by making it very clear that the type of injury being threatened is also important to establish pursuant to 18 USC 115 because there are three different possible statutory maximum sentences of 1-year, 6-years and 10-years that are specifically dependent exactly upon the type of injury being threatened.  The judiciary instead decided that the Supreme Court precedent of *Apprendi v. New Jersey 530 U.S. 466 (2000)* is no longer valid and that the court can choose whatever statutory maximum penalty it wishes to apply to defendant's admission of a threat to injure reputation.

9. Appellant (despite his incompetence) thereby clearly requested dismissal of the entire indictment because threat to injure reputation cannot be criminalized under the statutes charged (as documented in ECF#061). The judiciary refused to dismiss the indictment in ECF#042, ECF#054, ECF#062, ECF#112 by merely claiming that all threats issued by the Muslim defendant are illegal (regardless of what is being threatened) and thus it is thereby solely at the discretion of anyone who wishes to imprison defendant to file a false charge against him.  The court's extraordinary ruling is as follows:

> ECF#042, Pg5 - "Our Court of Appeals again last week discussed the elements required for conviction under Section 875(c) in the United States V. Elonis ... Nothing in §875(c), as reviewed by our Court of Appeals last week, **requires the identity of the type of injury threatened by Mr. Kabbaj** or [the identity of] the "other person[s]" who, in addition to a federal judge or Detective Egan, may be threatened." (Emphasis added)

10. The judiciary above cites a recent Supreme Court ruling on the topic of threat jurisprudence known as Elonis v. United States 135 S. Ct. 2001, claiming it establishes a precedent affirming that **the type of injury threatened is not a required element of the [threat] offenses charged against appellant (despite statutory language to the contrary)**. An individual can clearly threaten to injure a physical body (as criminalized by 18 USC §875c), or they can threaten to injure property and/or reputation as part of an extortion plot (as criminalized by 18 USC §875d), or they can threaten to injure emotions, psychological well-being, financial well-being, spiritual well-being or any other form of metaphysical well-being (which is not illegal).  Not all threats are created equal.

11. FN#03 includes numerous dictionary definitions of the word "threat" and how that word can be used, thereby affirming that if the mere act of issuing a "threat" is now criminalized by the judiciary regardless of the type of injury being threatened, this vastly expands the type of speech that can be charged as a crime to include threats to commit any lawful action.  If defendant threatens to evict a tenant for failing to pay the rent, they can retaliate against him by filing a complaint accusing defendant of a violent felony "threat crime" under 18 USC §875(c), yet if defendant merely evicts a tenant for failing to pay the rent (without providing advanced warning of the imminent eviction in the form of a threat), the judiciary claims that only in that situation would defendant be free from potential prosecution under any of the available threat statutes. According this this legal logic employed by the judiciary, defendant was thereby convicted under 18 USC §875(c) for threatening to have Thynge investigated for committing crimes, but presumably defendant would not have been charged with a threat crime if he merely acted to destroy Thynge's reputation without providing her any advanced notice of it.

12. The judiciary thereby criminalized appellant's threat to injure reputation as being a form of "assault," based upon a religious theory promoted by the LGBT religion which alleges that the physical body is not subject to any dimensional boundaries that can contain it (and thus reputation can now be considered a physical extension of the LGBT body). Even if the judiciary unilaterally criminalizes threat to injure reputation based upon its personal religious beliefs, such offense cannot also qualify as a "felony crime of violence" because *Apprendi v. New Jersey 530 U.S. 466 (2000)* mandates that any conduct which specifically increases the statutory maximum penalty applicable to <u>any</u> form of assault <u>must thereby be admitted or otherwise found beyond reasonable doubt by a jury</u>.

13. Defendant addressed this in numerous pleadings to include ECF#135 (herein the "Sentencing Memo" of approximately 20 pages). Appellant's admitted offense conduct of threatening reputation ("simple assault") doesn't involve a threat to engage physical contact (i.e. "non-simple assault"), thus it can only be punished as "simple assault" under 18 USC §115(b)(1). The indictment clearly never alleges any specific penalty structure under subsection (b) of the statute, and so it certainly does not classify a threat to injure reputation (i.e. a threat to simple assault) as punishable under subsection (b)(4) because those penalties only apply to threats of **non-simple assault or higher** (such as threats to kidnap/murder).

14. 18 USC 115(a)(1)(B) & (b) assault crimes/penalties are defined/codified as follows (EMPHASIS ADDED):

(1) The punishment for an assault in violation of this section is (A) a fine under this title; and (B)
    (i) … **simple assault** [lacking physical contact or use of weapon]…**not more than 1 year**
    (ii) … [non-simple] physical contact [assault] … not more than 10 years
    (iii) … [non-simple] bodily injury [assault] … not more than 20 years
    (iv) … [non-simple] serious bodily injury [assault] … not more than 30 years
(2) … kidnapping … any term of years or for life
    if the death of any person results … death or life imprisonment
(3) … murder in the first degree … death or by imprisonment for life
    … murder in the second degree … any term of years or for life
(4)    a threat [to kidnap or murder] …not more than 10 years
    a threatened [non-simple] assault … shall not exceed 6 years

15. Thus 18 USC §115 provides nine different <u>official maximum penalties</u> and one potential "maximum penalty" to punish a total of ten separate and distinct crimes, five of which specifically criminalize assault and/or the threat thereof. Nine of these crimes have statutory maximum penalties that are described using identical language which declares that the maximum punishment "is" or "shall be" a "term" of "not more than" some number of years. The only portion of the entire statute that uses different language to describe a potential maximum penalty is when it declares that "imprisonment for a threatened assault <u>shall not exceed</u> 6 years." Why does the statute use the words "is" or "shall be" a "term" when it describes the nine-prior statutory maximum penalties, yet in the very last sentence of the statute it proclaims (in its final dying breath) that imprisonment for "threatened assault <u>shall not exceed</u> 6 years"?

16. This difference in language was already investigated in Great American Insurance Co. v. Norwin School District 544 F.3d 229 (3rd Cir. 2008) (the text of which is documented in FN#18), wherein the Third Circuit itself established that the term "shall not exceed" is obviously

meant to convey a different meaning than the term "is" or "shall be." This difference in language seems to indicate that 18 USC §115 is self-aware that it would be contradictory to impose two different statutory maximum penalties (of 1-year and 6-years) for offense conduct that equally qualifies to be defined as both "simple assault" and "threatened assault," although it does not correct or clarify the issue any further after essentially declaring this anomaly to be present in the statute. This fatal flaw now renders the statute unconstitutional according to traditional interpretations of these laws which took place prior to *Obergefell v. Hodges*, which is the precedent that the judiciary now relies upon to engage these new interpretations of the First Amendment as demonstrated in this instant case when clearly it has no legal application to this instant case.

17. Any indictment which alleges a "threat to assault" (and nothing more), can only be construed as charging a <u>simple assault</u>. "Non-simple assault" is a term coined by the judiciary to define any assault that involves physical contact, use of a weapon, serious bodily injury and/or intent to commit another felony (as there are typically 3-4 different types of non-simple assault). "Simple assault" is a term coined by the judiciary to define the lowest form of "assault," which is a form of assault that specifically excludes physical contact, use of a weapon, serious bodily injury and/or intent to commit another felony. Because the term "assault" comprises conduct ranging from misdemeanor "simple assault" to felony "non-simple assault," any statute that mentions the term "assault" must be clear on whether it is intending to reference the misdemeanor or felony provision of the statute (because that is what sets the statutory maximum). Congress already corrected this clearly fatal ambiguity in 18 USC §111 (the federal assault statute) by amending it to distinguish between simple/non-simple assault (as documented in FN#06), but they failed to correct this identical ambiguity in 18 USC §115. The relevant text of FN#06 is as follows:

> The court of appeals held that the indictment was sufficient to allege only a simple assault because it did not charge the defendant with engaging in physical contact as required for a non-simple assault. Thus, the court remanded for resentencing as a misdemeanor simple assault. The entire legislative history of this provision (Court Security Improvement Act of 2007, Pub. K. No. 110-117, tit. II, 208(b), 121 Stat. 2538 (2008)] is found in the following comment by Senator Kyl: "This provision also clarifies an assault offense that was created by Congress in 1994. The offense establishes penalties for simple assault, assault with bodily injury, and for assault in 'all other cases.' As one might imagine, the meaning of assault in 'all other cases' has been the subject of confusion and judicial debate. The offense has also been the subject of constant vagueness challenges, and although those legal challenges have been rejected, the offense is rather vague. [The proposed Act] takes the opportunity to correct this legislative sin, codifying what I believe is the most thoughtful

explanation of what this language means, the 10th Circuit's decision in United States v. Hathaway ... so that people can easily figure out what this offense actually proscribes." [153 Cong Rec. S 15789-15790 (Dec. 17, 2007) (remarks of Sen. Kyl)]

18. It is thereby clear from the overall construction of the statute (and the prior corrections made by Congress to the original Federal Assault Statute at 18 USC §111 as documented in FN#6), that Congress clearly intended (in 18 USC 115) that "imprisonment for a threatened [non-simple] assault shall not exceed 6 years." The confusion arises because the statute declares the term "threatened assault" in its dying breath without clarifying **non-simple** as the type of assault which must be threatened in order to trigger any such 6-year maximum. The statute thereby clearly intends to punish threatened kidnap/murder with a 10-year maximum penalty, threatened [non-simple] assault with a 6-year maximum penalty, and threatened [simple] assault with a 1-year maximum penalty as demonstrated by the changes to 18 USC 111 which were made directly by Congress. A threat to injure reputation does not involve a threat to engage physical contact, use of weapon, serious bodily injury, kidnapping and/or murder, and so this conduct is only forcibly criminalized by the judiciary starting from the lowest (not highest) form of "assault" possible, which is "threatened [simple] assault." The LGBT judiciary instead criminalizes threat to injure reputation by classifying it as the highest form of felony assault possible in violation of not only *Apprendi*, but also another important precedent relevant to this matter which is Wurtz v. Risley, 719 F.2d 1438 (9th Cir. 1983) (documented in FN#17, an excerpt is as follows):

> But to punish as a felony the mere communication of a threat to commit such a minor infraction when the purpose is to induce action – any action – by someone, is to chill the king of "uninhibited, robust, and wide-open" debate on public issues that lies at the core of the First Amendment. See New York Times Co. v. Sullivan, 376 U.S. 254, 270, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964)

19. The above quote from Wurtz further affirms it is unconstitutional for the minor infraction of misdemeanor "simple assault" (which is itself equally defined as a "threatened assault") to be punished as a non-violent misdemeanor warranting a one-year maximum sentence, yet a "threatened [simple] assault" is instead punished as a violent felony warranting a six-year maximum sentence. "Simple assault" simultaneously exists as both a threat and an action, and thus there is technically no legal difference between offense conduct described using the generic terms "simple assault," "threatened assault" or "threatened simple assault". The Rule of Lenity (as documented in FN#05) mandates that when a statute is ambiguous by setting out multiple or

inconsistent statutory maximum penalties for identical offense conduct, that any such ambiguity be resolved in favor of imposing the more lenient statutory maximum penalty.

20. Since the judiciary has taken the unprecedented step of unilaterally criminalizing appellant's threat to injure reputation as a form of "assault" to specifically ensure he is convicted of a crime, but this unfortunate decision must now also conform to other legal precedents which govern how assaults must be sentenced in order to comply with *Apprendi*. The Third Circuit (and others) have previously affirmed that "simple assault" is not a "crime of violence" in numerous cases taking place prior to the Supreme Court decision in Obergefell v. Hodges (thereby requiring this designation to also be removed from appellant's misdemeanor "assault" conviction). The judiciary thereby violates all prior precedents by unilaterally categorizing "threat to injure reputation" as "felony assault" without first analyzing the actual offense conduct admitted by appellant to confirm that he does indeed qualify to be sentenced under a greater maximum penalty than that which is applicable to misdemeanor assault (as affirmed by the following):

FN#09- U.S. v. Hathaway, 318 F.3d 1001 (10th Cir. 2003) ("Simple assault" lacks contact)
FN#10- U.S. v. McCulligan, 256 F.3d 97 (3rd Cir. 2001) ("Simple assault" lacks contact)
FN#11- U.S. v. Vallery, 437 F.3d 626 (7th Cir. 2006) ("Simple assault" lacks contact)
FN#12- U.S. v. Hazlewood, 526 F.3d 862 (5th Cir. 2008) ("Simple assault" lacks contact)
FN#13- Tran v. Gonzales, 414 F.3d 464 (3rd Cir. 2005) (Reckless acts not "crime of violence")
FN#14- Popal v. Gonzales, 416 F.3d 245 (3rd Cir. 2005)("Simple assault" not "crime of violence")
FN#15- U.S. v. Otero, 502 F.3d 331 (3rd Cir. 2007) ("Simple assault" not "crime of violence")
FN#16- Leocal v. Ashcroft, U.S. 1, 125 S. Ct. 377 (2004) ("Crime of violence" not negligent)

## RELIEF REQUESTED

22. The supervision portion of the sentence has now exceeded the statutory maximum allowed by law starting on November 6th, 2018 (in violation of *Apprendi*) and must immediately be terminated. Defendant certifies that this Motion/Petition is served upon all counsel of record via email/ecf.

Submitted 3/21/2019 , /s/ Younes Kabbaj

**EXHIBIT 1**

LIST OF FOOTNOTES ("FN")
FN#01 - Text of 18 USC §875 (c) & (d) (Interstate communications)
FN#02 - Text of 18 USC §115(a)(1)(B) & (b) - Retaliating against a Federal official
FN#03 - Definitions of the word "threat"
FN#04 - Federal definition of the term "crime of violence" pursuant to 18 USC §16
FN#05 - Definition of the "Rule of Lenity"
FN#06 - Modern Federal Jury Instructions 18 USC §111
FN#07 - Modern Federal Jury Instructions 18 USC §115(a)(1)(B)
FN#08 - Elonis v. United States, 135 S. Ct. 2001, 192 L. Ed. 2d 1 (2015) (Analysis)
FN#09 - United States v. Hathaway, 318 F.3d 1001 (10th Cir. 2003) ("Simple assault" lacks contact)
FN#10 - United States v. McCulligan, 256 F.3d 97 (3rd Cir. 2001) ("Simple assault" lacks contact)
FN#11 - United States v. Vallery, 437 F.3d 626 (7th Cir. 2006) ("Simple assault" lacks contact)
FN#12 - United States v. Hazlewood, 526 F.3d 862 (5th Cir. 2008) ("Simple assault" lacks contact)
FN#13 - Tran v. Gonzales, 414 F.3d 464 (3rd Cir. 2005) ("Reckless burning/exploding not "crime of violence")
FN#14 - Popal v. Gonzales, 416 F.3d 245 (3rd Cir. 2005) ("Simple assault" not "crime of violence")
FN#15 - United States v. Otero, 502 F.3d 331 (3rd Cir. 2007) ("Simple assault" not "crime of violence")
FN#16 - Leocal v. Ashcroft, 160 L. Ed. 2d 271, 543 U.S. 1, 125 S. Ct. 377 (2004) ("Crime of violence" cannot be accident)
FN#17 - Wurtz v. Risley, 719 F.2d 1438 (9th Cir. 1983) (Threat should not be punished worse than the actions being threatened)
FN#18 - Great American Insurance v. Norwin School District, 544 F.3d 229(3rd Cir.2008) ("shall not exceed" is not "shall be")
FN#19 - United States v. Sutcliffe, 505 F.3d 944 (9th Cir. 2007) (Selective prosecution)

FN#01 – Text of 18 USC §875 (c) & (d) (Interstate communications)
(c)   Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.
(d)   Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both.

FN#02 – Text of 18 USC §115(a)(1)(B) & (b) - Retaliating against a Federal official
(a)(1)Whoever (B) threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section, with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished as provided in subsection (b).
(b)(1) The punishment for an assault in violation of this section is (A) a fine under this title; and (B)
(i)   if the assault consists of a simple assault, a term of imprisonment for not more than 1 year;
(ii)  if the assault involved physical contact with the victim of that assault or the intent to commit another felony, a term of imprisonment for not more than 10 years;
(iii) if the assault resulted in bodily injury, a term of imprisonment for not more than 20 years; or
(iv) if the assault resulted in serious bodily injury … or a dangerous weapon was used during and in relation to the offense, a term of imprisonment for not more than 30 years.
(2) A kidnapping, attempted kidnapping, or conspiracy to kidnap in violation of this section shall be punished as provided in section 1201 of this title for the kidnapping or attempted kidnapping of, or a conspiracy to kidnap, a person described in section 1201(a)(5) of this title.
(3) A murder, attempted murder, or conspiracy to murder in violation of this section shall be punished as provided in sections 1111, 1113, and 1117 of this title.
(4) A threat made in violation of this section shall be punished by a fine under this title or imprisonment for a term of not more than 10 years, or both, except that imprisonment for a threatened assault shall not exceed 6 years.

FN#03 - Definitions of the word "threat"
Dictionary.com - a declaration of an intention or determination to inflict punishment, injury, etc., in retaliation for, or conditionally upon, some action or course; menace (i.e. "He confessed under the threat of imprisonment"); an indication or warning of probable trouble (i.e. "The threat of a storm was in the air").

Merriam-Webster.com - an expression of intention to inflict evil, injury, or damage; an indication of something impending (i.e. "The sky held a threat of rain").
Dictionary.Cambridge.org - a statement that someone will be hurt or harmed, esp. if the person does not do something in particular; the possibility that something unwanted will happen, or a person or thing that is likely to cause something unwanted
En.OxfordDictionaries.com -
A statement of an intention to inflict pain, injury, damage, or other hostile action on someone in retribution for something done or not done (i.e. "The row occurred because of the claimant's complaint about the barking dog and his threats to take action about it," "I began to receive various threats, which included reporting me to the Law Society," "Her attendance at court had to be secured by a witness summons and a threat of arrest," "We interpreted the letter as a threat to sue, and we believe it was meant to be such a threat");
A person or thing likely to cause damage or danger (i.e. "Knowledge that a stress is likely to occur constitutes a threat to the individual," "These boys are dangerous, you know, and a threat to the moral well-being of all our children," "Criticizing students and putting them under pressure is seen to be a dangerous threat to their sense of self");
The possibility of trouble, danger, or ruin. (i.e. "The Company faces the threat of liquidation proceedings," "Under threat of takeover, once-sleepy executives rushed to reshape their companies," "Government funding through the Arts Council was under threat if they were rejected," "It is not so much the notion of democracy itself that is under threat");
Black's Law Dictionary 1618 (10th ed. 2014) - communicated intent to inflict harm or loss on another or [their] property …
Oxford English Dictionary 352 (2d ed. 1998) - declar[ing] ... one's intention of inflicting injury upon a person ...
American Heritage Dictionary 1801 (4th ed. 2000) - expression of an intention to inflict pain, injury, evil or punishment ...
Random House Unabridged Dictionary 1975 (2d ed. 1987) - declaration of an intention ... to inflict punishment, injury …

FN#04 - Federal definition of the term "crime of violence" pursuant to 18 USC §16
18 USC 16§(a) - an offense that has as an element the use, attempted use or threatened use of physical force against the person or property of another; or (b) any offense that is a felony and that, by its nature, involves substantial risk that physical force against the person or property of another may be used in the course of committing the offense

FN#05 - Definition of the "Rule of Lenity"
Rule of Lenity is a judicial doctrine requiring that those ambiguities in a criminal statute relating to prohibition and penalties be resolved in favor of the defendant if it is not contrary to legislative intent. It embodies a presupposition of law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. The courts while construing an ambiguous criminal statute that sets out multiple or inconsistent punishments should resolve the ambiguity in favor of the more lenient punishment.

FN#06 - 1-14 Modern Federal Jury Instructions - Criminal, 14.01(18 USC §111)(Matthew Bender)
INSTRUCTION 14-1 COMMENT --- Section 111 was amended in 2008 to clarify some ambiguous language that had led to substantial confusion with respect to what was required to be included in an indictment and what must be charged to the jury [Court Security Improvement Act of 2007, Pub. L. No. 110-177, tit. II, 208(b), 121 Stat. 2538 (2008)]. Prior to the 2008 amendment, section 111 provided in full: [(a) In General - Whoever - (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designation in section 1114 of this title while engaged in or on account of the performance of official duties ... shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and in all other cases, be fined under this title or imprisoned for not more than 8 years, or both. (b) Enhanced Penalty - Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.] The problem that arose is that the statute did not define "simple assault" as used in section 111(a), so it was unclear what the difference was between simple assaults and "all other cases." This ambiguity became critical in the wake of the Supreme Court's decision in Apprendi v. New Jersey (530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d. 435 (2000)] because there were different maximum penalties for these two types of assaults and for the enhanced offense in section 111(b), and Apprendi requires that facts that have the potential to increase the maximum penalty submitted to the jury. The courts generally agreed that section 111 should be interpreted to define three separate offenses: (1) "simple assaults" that did not involve any physical contact with the victim; (2) "all other cases" under section 111(a) including all assaults that involved physical contact with the victim but did not involve the use of a weapon or the infliction of bodily injury; and (3) assaults under section 111(b) that did result in bodily injury or involved the use of a weapon . The Eight and Tenth Circuits adopted a slightly different definition of a "simple assault" stating that it should be defined as forcible conduct that "does not involve actual physical contact, a dangerous weapon, serious bodily injury, or the intent to commit murder or another serious felony." Recognizing the ambiguity of the assault statutes, Congress enacted the Court Security Improvement Act of 2007, resolving this problem by deleting the phrase "in all other cases" and replacing it with "where such acts involve physical contact with the victim of that assault or the intent to commit another felony." Thus, it is clear under the revises statute that section 111 now defines three offenses: (1) simple assaults; (2) assaults that involve physical contact or the intent to commit another felony; and (3) section 111(b) assaults that involve a dangerous weapon or bodily injury. It is critical that the indictment define which of the three

offenses is being charged, and the jury instructions should conform to the indictment. An example of the problems that can arise when the indictment is vague is the Tenth Circuit's decision in United States v. Hathaway (318 F.3d 1001 (10th Cir. 2003)], which was specifically commended in the legislative discussion of the (Court Security Improvement] Act [of 2007]. In that case, the defendant physically assaulted a federal agent, but the indictment alleged only that he had "forcibly assaulted" the agent. The court of appeals held that the indictment was sufficient to allege only a simple assault because it did not charge the defendant with engaging in physical contact as required for a non-simple assault. Thus, the court remanded for resentencing as a misdemeanor simple assault. The entire legislative history of this provision (Court Security Improvement Act of 2007, Pub. K. No. 110-117, tit. II, 208(b), 121 Stat. 2538 (2008)] is found in the following comment by Senator Kyl: "This provision also clarifies an assault offense that was created by Congress in 1994. The offense establishes penalties for simple assault, assault with bodily injury, and for assault in 'all other cases.' As one might imagine, the meaning of assault in 'all other cases' has been the subject of confusion and judicial debate. The offense has also been the subject of constant vagueness challenges, and although those legal challenges have been rejected, the offense is rather vague. [The proposed Act] takes the opportunity to correct this legislative sin, codifying what I believe is the most thoughtful explanation of what this language means, the 10th Circuit's decision in United States v. Hathaway ... so that people can easily figure out what this offense actually proscribes." [153 Cong Rec. S 15789-15790 (Dec. 17, 2007) (remarks of Sen. Kyl)]. INSTRUCTION 14-2 ELEMENTS OF THE OFFENSE --- In order to find the defendant guilty of the crime charged, the government must prove beyond a reasonable doubt each of the following elements: First, that on or about the date specified in the indictment, [specify alleged victim named in indictment] was a federal officer, as I will define that term for you; Second, that at that time, the defendant forcibly assaulted (or resisted or opposed or impeded or intimidated or interfered with) [the victim] (if a "non-simple assault is charged, add: and this forcible action involved actual physical contact with [the victim] or the intent to commit the offense of (describe offense]). Third, that, at the time, [the victim] was engaged in the performance of his official duties (or that [the victim] was assaulted on account of his official duties); and Fourth, that the defendant acted willfully. If a violation of section 111(b) is charged, add: Fifth, that the defendant used a deadly or dangerous weapon to commit such acts (or that the defendant's actions resulted in bodily injury) ... COMMENT - As discussed in the Comment to Instruction 14-1, above, section 111 was amended in early 2008 [in the Court Security Improvement Act of 2007] to clarify some ambiguity in its language. Under both the previous and amended versions, section 111 defines three offenses: (1) "simple assaults," which do not involve physical contact, the use of a dangerous weapon or bodily injury to the victim or, as added by the 2008 amendment, an intent to commit another felony; (2) non-simple assaults, which involve physical contact or (now) an intent to commit another felony; and (3) section 111(b) assaults, which involve a dangerous weapon or bodily injury. Thus, the additional language in the second element must be included whenever there was physical contact with the victim (or under the amended statute, an intent to commit another felony). If this language is not included in the indictment and charged to the jury, then the maximum penalty allowable is one year in prison; if it is properly charged, the maximum penalty increases to eight years. INSTRUCTION 14-9 WILLFULNESS --- The fourth element that the government must prove beyond a reasonable doubt is that the defendant committed the act or acts charged in the indictment willfully. In other words, you must be persuaded that the defendant acted voluntarily and intentionally, and not by mistake or accident ... COMMENT - Finally, there are circumstances that will call for the use of instructions beyond that recommended in the text, but that are not easy to anticipate. For example, in United States v. Montoya [739 F.2d 1437 (9th Cir. 1984)], the defendant was convicted of violating section 111 for having used a crutch to strike a park ranger during a campsite scuffle. The defendant's defense at trial was that he did not intend to strike the ranger, but had intended only to "knock a can of beer" from the hand of a companion. The trial court instructed the jury on the issue of "transferred intent," a concept ordinarily confined to first-year law school examinations: "If the defendant intended to assault another person with intent to do bodily harm, but he harms a third person who he did not intend to harm, the law considers the defendant just as guilty as if he had actually harmed the intended victim." The Ninth Circuit reversed, holding that the instruction erroneously permitted the jury to convict even if the defendant did not actually intend to strike the ranger. The court of appeals distinguished [United States v.] Feola [420 U.S. 671, 95 S. Ct. 1255, 43 L. Ed. 2d 541 (1975)] on the ground that in that case the defendant intended to assault the individual who, unknown to him, was a federal officer, while in Montoya, the evidence at best indicated that the defendant intended to assault someone who the defendant knew was not a federal officer. Thus, the court rejected the application of the concept of transferred intent in section 111 cases.

FN#07 - 1-14 Modern Federal Jury Instructions - Criminal, 14.02(18 USC §115)(Matthew Bender)
INSTRUCTION 14-14 THREAT TO ASSAULT, KIDNAP OR MURDER --- The first element the government must prove beyond a reasonable doubt is that the defendant threatened to assault, kidnap, or murder [name of victim]. A threat is a serious statement expressing an intention to inflict bodily injury (or murder or kidnap) at once or in the future, as distinguished from idle or careless talk, exaggeration, or something said in a joking manner. For a statement to be a threat, the statement must have been made under such circumstances that a reasonable person who heard or read the statement would understand it as a serious express ion of an intent to inflict bodily injury. In addition, the defendant must have made the statement intending it to be a threat, or with the knowledge that the statement will be viewed as a threat ... COMMENT - In Elonis v. United States [576 U.S. -, 135 S. Ct. 2001, 192 L. Ed. 2d 1 (2015)] the Supreme Court rejected the standard under which a conviction could be based solely on how a communication would be understood by a reasonable person. In that case, Elonis' conviction was premised solely on how his Facebook posts would be understood by a reasonable person. Applying 18 USC 875(c), the Court held that a "reasonable person" standard, a civil liability tort principle, "is inconsistent with 'the conventional

requirement for criminal conduct,' " that the defendant be aware of some wrongdoing. The recommended instruction reflects the position of the Ninth Circuit in [United States v.] Bagdasarian [652 F.3d 1113 (9th Cir. 2011)]. Its language regarding the objective portion of the test is based on the language in that case. The instruction's statement of the subjective test uses the language that the Court in Elonis stated would satisfy the mental state requirement ... Unlike section 871, which uses the phrase "inflict bodily harm," section 115 uses the term "assault." In one case [United States v. Fulmer, 108 F.3d 1486, 1496 (1st Cir. 1997)], the jury requested the definition of "assault" and the court gave a supplemental instruction defining that term as it is defined in cases under section 111 as a "deliberate and intentional attempt or threat to inflict physical injury upon another." Although reversing on another issue, the court of appeals pointed out that this could only be confusing to the jury as a "threat to assault" was now defined, in effect, as "a threat to attempt or threaten." Instruction 14-14 avoids this problem by substituting "inflict bodily injury" in place of "assault" in the definition of a "threat." INSTRUCTION 14-16 INTENT TO [RETALIATE] IMPEDE INTIMIDATE OR INTERFERE - If applicable: To "retaliate" means to return like for like, to act in reprisal for some past act.

FN#08 - Analysis - Elonis v. United States 135 S. Ct. 2001, 192 L. Ed. 2d 1 (2015)
The Supreme Court began its analysis by noting that the dictionary definitions of threat do not set forth an intent requirement. See 135 S. Ct at 2008 ("These definitions ... speak to what the statement conveys, not to the mental state of the author"). The Chief Justice explained, however, that the "mere omission from a criminal enactment of any mention of criminal intent should not be read as dispensing with such a requirement. 135 S. Ct. at 2009 (quoting Morissete v. United States, 342 U.S. 246, 250, 72 S. Ct. 240, 96 L. Ed 288 (1952)). Instead, the Chief Justice noted, courts must read a mens rea requirement into such statutes to "separate wrongful conduct from otherwise innocent conduct." 135 S. Ct. at 2010. Chief Justice Roberts said that this rule of construction reflects the basic principle that "wrongdoing must be conscious to be criminal" and that a defendant must be "blameworthy in mind" before he can be found guilty. 135 S. Ct. at 2009. Chief Justice Roberts said that the trial judge erred in using a reasonable person standard, because that standard did not require proof that Elonis was aware of his wrongdoing. See 135 S. Ct. at 2009-12. Without specifying the intent that [18 USC] 875(c) requires, the Chief Justice said only that "negligence is not sufficient." 135 S. Ct. at 2013.

FN#09 – U.S. v. Hathaway, 318 F.3d 1001 (10th Cir. 2003) ("Simple assault" lacks contact)
{318 F.3d 1003-1005} On appeal, Mr. Hathaway asserts that the indictment only charged him with a misdemeanor violation of [18 USC] 111 involving SIMPLE ASSAULT. Relying on Jones v. United States, 256 U.S. 227, 143 L.Ed. 2d 311, 119 S. Ct. 1215 (1999), he argues that since both the indictment and the jury instructions failed to distinguish between simple and non-simple assault -- and thus charged only a misdemeanor violation -- he could not in fact be convicted of a felony. As noted at oral argument, Mr. Hathaway does not seek to have his conviction set aside. Instead, he asks this court to order all records to reflect that he was convicted only of a misdemeanor violation of [18 USC] 111...{318 F.3d 1004} Mr. Hathaway was subsequently charged in a one count indictment which reads as follows: ... "RICHARD K. HATHAWAY, did knowingly and intentionally forcibly assault ... Social Security Administration Special Agent, Bruce McKimens, while he was engaged in and on account of the performance of his official duties, in violation of Title 18, United States Code, Section 111" ... On a separate page appended to the indictment at some unknown time, the following language appeared "PENALTIES: Count 1: Imprisonment [not more than] 3 years; $250,000 .00 Fine; [not more than) 1 year [supervised release); Special Assessment $100.00." The indictment included no factual details of Mr. Hathaway's conduct." {318 F.3d 1005} In light of the Supreme Court's reasoning in Jones, Mr. Hathaway argued that [18 USC] 111(a) essentially prohibits two different offenses with different required elements. Thus, conviction for non-simple assault under [18 USC] 111(a) would be valid only if every element of that offense is properly charged in the indictment and then found to exist beyond a reasonable doubt by the jury. Because that did not happen here, Mr. Hathaway argued that he could only be validly sentenced for a misdemeanor violation of [18 USC] 111. {318 F.3d 1008-1010} Specifically addressing [18 USC] 113, we have held that "simple assault" is committed by either a willful attempt to inflict injury upon the person of another, or by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." United States v. Joe, 831 F.2d 218, 220 (10th Cir. 1987). However, such a definition of "simple assault" is really nothing more than a non-exclusive recitation of what constitutes assault. It does little to differentiate it from "all other cases" assault in [18 USC] 111 as that statute now exists" ... {318 F.3d 1009} Nonetheless , Mr. Hathaway asserts that Apprendi should apply here because he is prejudiced by the collateral consequences that attach to a felony conviction as opposed to a misdemeanor conviction, including, among others, the loss of the right to vote, the right to hold public office, the right to sit on a jury and the right to possess any type of firearm. We need not decide whether an Apprendi analysis is appropriate at this point, because we must first address the issue of what crime was charged. Essentially, Mr. Hathaway argues that although the indictment partially quoted the text of the statute, it failed to include an essential element of a felony charge under [18 USC] 111(a) and thus charged only a misdemeanor offense. Mr. Hathaway does not argue merely that the indictment failed to allege an essential element of the offense for which he was convicted, but rather that the indictment charged an offense different than the one for which he was sentenced. Whether Mr. Hathaway's argument is couched in terms of the sufficiency of the indictment or in terms of constructive amendment based on the jury instructions, our review is de nova. United States v. Avery, 295 F.3d 1158, 1173-74 (10th Cir. 2002); United States v. Van Tieu, 279 F.3d 917, 920 (10th Cir. 2002). "In federal prosecutions, 'no person shall be held to answer for a capital, or otherwise infamous crime, unless presentment or indictment of a Grand Jury' alleging all the elements of the crime." Harris, 122 S. Ct. at 2410 (quoting U.S.

Const. Amend. V and citing Hamling v. United States, 418 U.S. 87, 117, 41 L. Ed. 2d 590, 94 S. Ct. 2887 (1974)) ... The indictment here failed to allege a required and essential element of the felony crime for which Mr. Hathaway was convicted. As noted above, the only difference between a felony offense and a misdemeanor offense under [18 USC] 111(a) is the nature of the assault. Although the indictment {318 F.3d 1010} charged the offense by quoting a portion of the statute, it failed to quote the portion differentiating "simple assault" and "all other cases" assault for which felony penalties attach. Furthermore, the indictment did not allege any factual details of Mr. Hathaway's conduct; it contained no allegation of physical contact between Mr. Hathaway and Agent McKimens. As a result, this indictment did not set forth all the elements of the offense of conviction, and did not put Mr. Hathaway on fair notice that he needed to defend against the felony charge. Although the record reflects that penalty language indicating a felony charge was appended to the indictment on a separate page, the record is also silent as to when the page was appended and whether the grand jury even saw or considered the language. On the basis of no more facts than these, we decline to even consider how this language affects the sufficiency of the indictment. In light of the foregoing, we hold that this indictment was insufficient to sustain Mr. Hathaway's conviction for a felony violation under [18 USC] 111(a) ... Although the indictment here was insufficient to allege a felony violation of [18 USC] 111(a), it was sufficient to allege a misdemeanor violation of [18 USC] 111(a) involving simple assault. Mr. Hathaway does not contend that he was not validly convicted of violating [18 USC] 111(a); instead, he argues that in light of the deficient indictment, the district court could only have viewed his conviction as one for the misdemeanor. We agree. Accordingly, we hereby remand to the district court for compliance with this opinion that all of Mr. Hathaway's records be corrected to reflect his conviction for a misdemeanor violation of (18 USC] 111(a).

FN#10 – U.S. v. McCulligan, 256 F.3d 97 (3rd Cir. 2001) ("Simple assault" lacks contact)
{256 F.3d 99-100} The United States Criminal Code describes the two crimes at issue -- simple {256 F.3d 100} assault and "all other cases" of assault -- in a single statutory subsection, 18 USC 111(a). Under Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed 2d 435 (2000), the fact that various offenses are grouped together or share a particular label is irrelevant. Instead, the Apprendi Court held, except for the fact of a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." Apprendi, 120 S. Ct. at 2362-63. The relevant inquiry is whether "the required finding exposes the defendant to a greater punishment than that authorized by the jury's guilty verdict." Id at 2365. Because non-simple assault carries a greater statutory maximum than simple assault, each element of non-simple assault must be charged in the indictment and proven to a jury beyond a reasonable doubt. The District Court instructed the jurors that they were to find McCulligan guilty upon proof of three elements: (1) that he forcibly assaulted the person named in the indictment, (2) that the victim was a federal officer, and (3) that McCulligan did the acts charged voluntarily and intentionally ... The Court further instructed the jury that "forcible assault" means "any deliberate and intentional attempt or threat to inflict physical injury on another person with force or strength, when the attempt or threat is coupled with an apparent present ability to do so ... A forcible assault may be committed by a defendant without actually touching, striking or doing bodily harm to the other person" ... The government concedes that whatever fact separates "all other cases" of assault from mere "simple assault," the jury was not asked to find it ... Any sentence greater than one year on the [18 USC] 111 Count thus represents error under Apprendi. Preliminarily, we must respond to the government's contention that because McCulligan failed to object to any Apprendi error either at trial or during sentencing, we review only for plain error. We surely would not have expected McCulligan to object to the "simple assault" jury charge at issue in this case; he had no responsibility and certainly no incentive to point out that the government could have attempted to win a conviction on some greater offense. United States v. Candelario, 240 F.3d 1300, 1305 (11th Cir. 2001). No error occurred from McCulligan's perspective until the sentencing stage, when, although not explicitly invoking Apprendi, he in fact objected to the Court's determination that his offense of conviction was something greater than simple assault. {256 F.3d 102-104} The government states correctly that, at common law, there were no degrees of assault or battery. Rather, "assault" was defined as the "attempt or offer to beat another, without touching him," Blackstone, Commentaries at 120, or the "placing of another in reasonable apprehension of a battery." United States v. Ramirez, 233 F.3d 318, 321-22 (5th Cir. 2000) (citing LaFave & Scott, Substantive Criminal Law 7.16 (1986)). "Battery" was defined at common law as the unlawful beating of another, including "the least touching of another's person willfully, or in anger." Blackstone, Commentaries at {256 F.3d 103} 120. Battery could rise to the crime of mayhem where the defendant caused permanent injury. Id. at 121. Over time, many jurisdictions have come to use the term "assault" to describe both assaults and batteries. Rollin M. Perkins and Ronald N. Boyce, Criminal Law 159-60 (3d ed. 1982); Black's Law Dictionary 114 (6th ed. 1990) ... {256 F.3d 104} Congress chose the terms "simple assault" and "all other" assaults, which seem to suggest, if not explicitly refer to, the traditional notion of assault as a crime separated from battery according to the presence or absence of touching ... The record contains no evidence of actual contact by McCulligan. Thus, even assuming Neder (v. United States, 527 U.S. 1, 144 L. Ed. 2d 35, 119 S. Ct. 1827 (1999)] applies to this case, any "conviction" for non-simple assault cannot be salvaged -- the error would not be harmless. {256 F.3d 106-107} The government contends that the court may determine, by a preponderance of the evidence, the "offense statutory maximum" for purposes of sentencing just as it may determine drug quantity. We disagree. Finding drug quantity based on evidence such as undisputed lab results is far different than pretending the jury convicted a defendant of one crime when actually he or she was convicted of another. Moreover, the guidelines do not instruct judges to determine the statutory maxima of offenses. Rather, the Guidelines state that "Offense Statutory Maximum ... refers to the maximum term of imprisonment authorized for the offense of conviction ..." USSG ["United States Sentencing Guidelines] 4B1.1, Application Note 2.

The maximum sentence faced by a defendant convicted of a particular crime is set by Congress, not "found" by courts {256 F.3d 107} While, even after Apprendi, a sentencing court may make certain factual determinations as it calculates the sentence under the Guidelines, a defendant cannot be convicted of one crime yet sentenced under the guidelines as though he or she were convicted of some other crime … The jury charge and facts of this case both point to a conviction for simple assault under [18 USC 111] (a). The District Court erroneously determined instead that McCulligan was convicted under the "all other" assaults provision, and this error led to a misapplication of the Guidelines. We will affirm the conviction but remand for resentencing.

FN#11 – U.S. v. Vallery, 437 F.3d 626 (7th Cir. 2006) ("Simple assault" lacks contact)
{437 F.3d 628-630} The government appeals from the district court's sentencing of Roosevelt Vallery as a misdemeanant following this conviction under 18 USC 111(a). It is the government's contention that the indictment properly alleged a felony rather than a misdemeanor. Vallery's conviction is not in dispute. A fair reading of the statute requires us to conclude that the misdemeanor provision of [18 USC] 111(a) applies to all conduct prohibited by the subsection. Having determined that Vallery's conviction was for a misdemeanor, we affirm his twelve-month sentence. {437 F.3d 629} The grand jury returned the following one-count indictment: " ... Roosevelt D. Vallery, defendant herein, did knowingly and forcibly assault, resist, impede, and interfere with Ron Garver, a Federal Correctional Officer, while he was engaged in his official duties, to wit: conducting a visual search and restraining a federal inmate attempting to dispose of contraband, in violation of Title 18, United States Code, Sections [sic]111(a)(1)" ... {437 F.3d 630} Adhering to Jones v. United States, 526 U.S. 227, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999), several other circuits have found post-1994 amendment [18 USC] 111 to constitute three separate offenses: first, misdemeanor simple assault under [18 USC] 111(a); second "all other cases" felony assault under [18 USC] 111(a); and third, felony assault involving a deadly or dangerous weapon or resulting in bodily injury under [18 USC] 111(b). See, e.g., United States v. Hathaway, 318 F.3d 1001, 1006-1008 (10th Cir. 2003); United States v. Yates, 304 F.3d 818, 821-22 (8th Cir. 2002); United States v. McCulligan, 256 F.3d 97, 102 (3rd Cir. 2001); United States v. Chestaro, 197 F.3d 600, 608 (2nd Cir. 1999); United States v. Nunez, 180 F.3d 227, 233 (5th Cir. 1999). Even though we have not specifically so held, we assumed as much in United States v. Gray, 332 F.3d 491, 492-93 (7th Cir. 2003) (finding error in sentence exceeding statutory maximum of [18 USC] 111(a) where indictment failed to allege violation of [18 USC] 111(b)). The parties do not dispute the issue, and we think the question is settled. {437 F.3d 633-634} Turning to Vallery's indictment [footnote1], the language closely follows the language {437 F.3d 634} of [18 USC] 111(a) sufficiently to allege the elements of simple assault. However, physical contact was not explicitly or, as previously discussed, implicitly alleged; therefore, we agree with the district court's conclusion that Vallery was not charged with, and could not be convicted of, "all other assaults." Because Vallery was charged only with a misdemeanor and not a felony, he was subject to a statutory maximum term of imprisonment of only one year, not eight. Neither the government nor Vallery otherwise challenges the reasonableness of Vallery's sentence of twelve months' imprisonment. [footnote1] ... the government repeatedly supports its argument by referring to Vallery's actions, which likewise have no place in determining congressional intent. If we were to find Vallery guilty of a felony because he did use physical force (as the background indicates), even though he was charged only with a misdemeanor (as we hold), then we would be unconstitutionally enlarging the scope of Vallery's indictment. See Stirone v. United States, 361 U.S. 212, 215-16, 80 S. Ct. 270, 4 L. Ed 2d 252 (1960). It is the indictment's allegations, not Vallery's conduct, which matters here. See Arrington, 309 F.3d at 45-46 ("The decisive question is not whether the element [defendant] proposes would make any difference in this or other cases, but whether Congress intended it to be an element of the offense").

FN#12 – U.S. v. Hazlewood, 526 F.3d 862 (5th Cir. 2008) ("Simple assault" lacks contact)
{526 F.3d 864-866} The bill of information charged Hazlewood with two counts. The first count stated that she "... did forcibly resist and assault Kelly J. Mann ... in violation of Title 18, United States Code, Section 111." The second count charged her with disorderly conduct in violation of 18 USC 13. With Hazlewood's consent, a jury trial was held on March 20, 2006 before a United States magistrate judge. The magistrate judge treated count one of the information as a charge of simple assault. The jury convicted Hazlewood on both counts ... Hazlewood then appealed to the district court, where that court reversed her disorderly conduct conviction but affirmed her assault conviction, holding that the crime charged in count one was a misdemeanor over which the magistrate judge properly exercised jurisdiction. She timely filed her notice of appeal before this Court ... On appeal, Hazlewood argues that the magistrate judge did not have jurisdiction over count one, the assault charge. In support of her contention, she highlights that count one alleges forcible resistance and assault, and does not include the words "simple assault." Since, according to Hazlewood, the information does not, on its face, allege a misdemeanor charge, the magistrate judge lacked jurisdiction and her conviction must be vacated. We disagree. {526 F.3d 865} Having examined Hazlewood's bill of information, we conclude that count one alleges simple assault. The count states that Hazlewood "forcibly resist[ed] and assault [ed]" Mann; nowhere does it allege or describe any physical contact. Since [18 USC] 111 provides that a person convicted of simple assault faces the maximum penalty of a fine and/or imprisonment not more than one year, count one is a misdemeanor charge over which the magistrate judge properly exercised jurisdiction ... If we accepted Hazlewood's argument we would effectively be adopting a per se rule that would require the inclusion {526 F.3d 866} of the phrase "simple assault" in charging instruments in order for counts to be classified as misdemeanor assaults under [18 USC] 111(a). We decline to do so; instead we join the Seventh and Tenth Circuits, which have both recently held that indictments only charge misdemeanor assaults under [18 USC] 111(a) when they do not describe any physical contact. [United States v.] Vallery, 437 F.3d at 633-34 (explaining that because the

indictment did not allege physical contact the defendant could only be charged with simple assault); United States v. Hathaway, 318 F.3d 1001, 1010 (10th Cir. 2003) (observing that because the indictment failed to allege any physical contact, the defendant was not put "on fair notice that he needed to defend against [a] felony charge").

FN#13 - Tran v. Gonzales, 414 F.3d 464 (3rd Cir. 2005) (Reckless not "crime of violence")
{414 F.3d 470-471} We are satisfied that Parson's requirement of specific intent under [Title 18, Section] 16(a) is correct and that "use of physical force is an intentional act." Parson, 955 F.2d at 866. The verb "use" means "to make use of; to convert to one's service; to employ; to avail oneself of; to utilize; to carry out a purpose or action by means of; to put into action or service, especially to attain an end." Black's Law Dictionary 1541 (6th ed. 1990). The Oxford English Dictionary defines the verb to mean, in its most common usages, "to make use of (some immaterial thing) as a means or instrument; to employ for a certain end or purpose," "to employ or make use of (an article , etc.), esp. for a profitable end or purpose; to utilize, turn to account," or "to work, employ, or manage (an implement, instrument , etc.); to manipulate, operate, or handle, esp. to some useful or desired end." Oxford English Dictionary 3574 (compact ed. 1971) (s.v. "use, v.,: definitions 7a, 8a, 9a). These definitions show an obvious commonality: the "use" of force means more than the mere occurrence of force; it requires the intentional employment of that force, generally to obtain some end. The plain language of the statute therefore compels the conclusion that the "use" of force requires specific intent to employ force, and not mere recklessness as to causing harm. In United States v. Trinidad- Aquino, 256 F.3d 1140, 1145 & n.2 (9th Cir. 2001), the Ninth Circuit cited similar definitions of the word "use" to conclude that the word "contain[s] a volitional requirement." It thus excluded the possibility of negligent use of force, but nonetheless held that recklessness -- that is, "conscious disregard of risk of harm that the defendant is aware of," id. at 1146 -- satisfies this volitional requirement. We respectfully disagree. As the Supreme Court said in Leocal, "use requires active employment." 125 S. Ct. at 382 ... The active employment of force, generally to achieve some end, corresponds closely to the concept of {414 F.3d 471} intent, not recklessness. Intent means "[a] state of mind in which a person seeks to accomplish a given result through a course of action." Black's Law Dictionary 810 (6th ed. 1990). The idea of purposeful action, or actively employing a means to achieve an end, is an essential component of both "use" and "intent," and is absent from the concept of "recklessness." We therefore hold that the "use of force" in [Title 18, Section] 16(a) requires specific intent to use force.

FN#14 - PopaI v. Gonzales, 416 F.3d 245 (3rd Cir. 2005)(Simple assault not crime of violence)
{416 F.3d 251} We have recently held that crimes with a mens rea of recklessness do not constitute crimes of violence. Tran v. Gonzales, No. 02-3879, 414 F.3d 464, 2005 U.S. App. LEXIS 12978, 2005 WL 1620320 (3d Cir. July 12, 2005). As Popal's crime was a recklessness offense, he is not removable as an aggravated felon. {416 F.3d 254-255} It is now settled law in this Circuit that an offender has committed a "crime of violence" under 18USC 16(a) only if he acted with an intent to use force. We first stated as much in Unites States v. Parson, 955 F.2d 858, 866 (3d Cir. 1992). In Leocal, 125 S. Ct. at 382, the Supreme Court held, in language echoing Parson, that the term "use of force" in 16(a) required, at the least, a mens rea greater than negligence. Most recently and explicitly, we reaffirmed Parson in Tran v. Gonzales ... There we clearly held that the 'use of force' in [18 USC]16 requires specific intent to use force ... Because Pennsylvania simple assault requires a mens rea of recklessness, rather than intent, it is not a crime of violence under [18 USC] 16(a).

FN#15 – U.S. v. Otero, 502 F.3d 331 (3rd Cir. 2007) (Simple assault not crime of violence)
{502 F.3d 335} We held in Popal that because a Pennsylvania simple assault violation requires a minimum mens rea of recklessness rather than intent, it is not a crime of violence. Popal, 416 F.3d at 254 ... Although the issue in Popal was the removal of an alien for committing a crime of violence under [18 USC] 16(a), its definition of "crime of violence" is identical to the definition contained in [USSG Section] 2L1.2, that is, whether the offense "has as an element the use ... of physical force against the person or property of another." Therefore, we conclude that our holding in Popal applies to the relevant crime of violence definition under USSG 2L1.2.

FN#16 - Leocal v. Ashcroft, 160 L. Ed. 2d 271, 543 U.S. 1, 125 S. Ct. 377 (2004)
{543 US 9} The critical aspect of [18 USC]16(a) is that a crime of violence is one involving the "use ... of physical force against the person or property of another" ... As we said in a similar context in Bailey, "use" requires active employment. 516 U.S., at 145, 133 L. Ed. 2d 471, 116 S. Ct. 501. While one may, in theory, actively employ something in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident. Thus, a person would "use ... physical force against" another when pushing him; however, we would not ordinarily say a person "use[s] ... physical force against" another by stumbling and falling into him. When interpreting a statute, we must give words their "ordinary or natural" meaning. Smith, supra, at 228, 124 L. Ed. 2d 138, 113 S. Ct. 2050. The key phrase in [18 USC] 16(a) - the "use ... of physical force against the person or property of another" - most naturally suggests a higher degree of intent than negligent or merely accidental conduct. See United States v. Trinidad-Aquino, 259 F.3d, at 1145; Bazan-Reyes v. INS, 256 F.3d, at 609.

FN#17 - Wurtz v. Risley, 719 F.2d 1438 (9th Cir. 1983)
{719 F.2d 1442} It is true that section 203(1) is confined to threat to "commit any criminal offense." That fact alone, however, is far from enough to prevent the statue from being overbroad. Indeed, it was the breadth of this provision, applying as it does to minor crimes

without victims, that caused a federal court to strike down an identical statute in Landry v. Daley, 280 F. Supp. 938, 964 (N.D. Ill 1968) ... When all of the characteristics of section 203(1)(c) are considered together, it becomes apparent that many relatively harmless expressions would come within its purview. The civil rights activist who states to a restaurant owner, "if you don't desegregate this restaurant I am going to organize a boycott" could be punished for the mere statement, even if no action followed. The example is not unduly hypothetical, and the threatened activity itself would raise delicate first amendment issues if carried out, to say nothing of its merely being threatened ... The statute would also apply to the citizen who tells city council members that if they fail to lower parking fees, she will park without putting a coin in the meter. Threats of sit-ins, marches in the street, mass picketing and other such activities are frequently threats to commit acts prohibited by law. Examples may easily be multiplied, but there is no need to belabor the point. The state, of course may punish minor infractions when they actually occur.  But to punish as a felony the mere communication of a threat to commit such a minor infraction when the purpose is to induce action – any action – by someone, is to chill the king of "uninhibited, robust, and wide-open" debate on public issues that lies at the core of the First Amendment. See New York Times Co. v. Sullivan, 376 U.S. 254, 270, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964)

FN#18 - Great American Insurance Co. v. Norwin School District 544 F.3d 229 (3rd Cir. 2008)
Nor are we persuaded by [defendant's] suggestion that the words "shall not exceed" should be construed to mean "shall be." The use of different language to address the same or similar issue … strongly implies that a different meaning was intended. In fact, it would have been quite easy to draft the requirements … using the same "shall be" language. The same language was not used, however; and we must assume that the choice of different words was deliberate. See, e.g., Penncro Assocs., Inc. v. Sprint Spectrum, L.P., 499 F.3d 1151, 1156-57 (10th Cir.2007) (noting that, "[w]hen a contract uses different language in proximate and similar provisions, we commonly understand the provisions to illuminate one another and assume that the parties' use of different language was intended to convey different meanings"); Taracorp, Inc. v. NL Industries, Inc., 73 F.3d 738, 744 (7th Cir.1996) (noting that "when parties to the same contract use such different language to address parallel issues ..., it is reasonable to infer that they intend this language to mean different things"); see also Commonwealth v. Berryman, 437 Pa.Super. 258, 649 A.2d 961, 969 (1994) (recognizing the rule that, when different language is used in parallel provisions of a statute, the provisions are intended to mean different things). In plain terms, by using the words "shall not exceed" instead of "shall be," Article 9.3.7 of the Supplementary Conditions set a ceiling on the monies to be retained during the second half of the project; it did not "direct" that retainage be five percent (5%) at the time of final payment.

FN#19 - United States v. Sutcliffe, 505 F.3d 944 (9th Cir. 2007) (Selective prosecution)
[Section] C. Selective Prosecution - Defendant argues that he was subjected to selective prosecution. To succeed on this claim, Defendant must demonstrate that (1) other similarly situated individuals have not been prosecuted and (2) his prosecution was based on an impermissible motive. United States v. Culliton, 328 F.3d 1074, 1081 (9th Cir. 2003) (per curiam). The standard for proving such a claim "is particularly demanding, requiring a criminal defendant to introduce 'clear evidence' displacing the presumption that a prosecutor has acted lawfully." Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 489, 119 S. Ct. 936, 142 L. Ed. 2d 940 (1999). In reviewing a selective prosecution claim, this circuit has employed both a de novo and a clear error standard. Culliton, 328 F.3d at 1080. Defendant bases his selective prosecution claim on the government's failure to prosecute an unidentified Global Crossing employee who sent Defendant an email stating "If you post my info again I'm personally going to make sure you get your ass kicked." (E.R. at 35.) However, we are convinced that this employee was not a similarly situated individual. The employee sent a single textual email to Defendant in response to illegal and provocative communication previously posted online by Defendant. In contrast, over the course of several months Defendant used text, music, voiceovers, and pictures to make multiple threats of violence against different individuals. The violence threatened by Defendant was much more serious in nature than the employee's threat, and Defendant's inclusion of personal information--such as the process server's license plate number and the attorney's home address - made his threats significantly more believable. Moreover, Defendant has not introduced any evidence even remotely showing that his prosecution was based on a discriminatory purpose. See Wayte v. United States, 470 U.S. 598, 610, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985) (holding that to prove discriminatory purpose, defendant must show that government undertook particular course of action "at least in part because of ... its adverse effects upon an identifiable group" (internal quotation marks omitted)). Thus, as in Culliton, Defendant "has no viable selective prosecution claim under any standard of review," 328 F.3d at 1080, and we accordingly affirm the district court's denial of Defendant's motion for dismissal based on selective prosecution.